The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pamela T. Young and the briefs and oral arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the holding of the Deputy Commissioner. Accordingly, the Full Commission Affirms the Deputy Commissioners decision and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing on 20 July 1998 as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer at all relevant times herein.
3. Hartford Specialty Risk Services, Inc. was the carrier on the risk at all relevant times herein.
4. Plaintiffs average weekly wage was $518.35, yielding a compensation rate of $345.74.
5. The parties stipulated to plaintiffs medical records from Western Wake Medical Center, Wake Neurology Associates, Inc., Raleigh Neurosurgical Clinic, Inc., Dr. David Ciliberto, Dr. Edward Mulcahy, Dr. Robert Kimber, Rex Hospital, Rehab Management Systems, Wake Medical Center, and Central Carolina Hospital.
6. The issues presented are:
a) Whether plaintiff is entitled to future medical expenses related to the injury by accident which he sustained while working for defendant-employer on 31 January 1997?
b) Whether plaintiff is entitled to continuing medical benefits for treatment of the injuries he sustained while working for defendant-employer on 31 January 1997?
c) Whether plaintiff is entitled to any other benefits under the North Carolina Workers Compensation Act?
 ***********
Based upon the entire evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing on 20 July 1998, plaintiff was a 40 year old high school graduate. Plaintiff is right hand dominant.
2. Plaintiff had been employed for years in the construction industry working as a form carpenter and performing other types of construction work. On 31 January 1997, plaintiff was 5 6 tall and weighed 275 pounds.
3. On 31 January 1997, plaintiff was working as a form carpenter on a project for defendant-employer remodeling Kenan Stadium in Chapel Hill, North Carolina. Plaintiff was working on the ground level when some workers more than 20 feet above him shouted that they were dropping a piece of plywood. Plaintiff lunged as a 4 x 8 sheet of plywood fell in the area where he was working. The plywood bounced and hit him squarely in the back, forcing him to the ground and jamming the full weight of his body and tool belt onto his outstretched arms and hands.
4. Plaintiff sustained a compensable injury by accident to his neck arising out of and in the course of his employment with defendant-employer and as a direct result of a specific traumatic incident of the work assigned on 31 January 1997.
5. On the night of the accident, plaintiff was in intense pain. The next morning, plaintiff presented to the emergency room at Western Wake Medical Center and reported pain in his neck and back and numbness and tingling in his hands, particularly in his right hand.
6. Before the date of the accident, plaintiff had never before had problems with pain, numbness or tingling in his hands.
7. On 6 February 1997, plaintiff was referred to Dr. Stephen Gupton, a neurologist. Plaintiff presented to Dr. Gupton and reported that his neck was hurting and that his fingers were numb. Dr. Guptons initial diagnosis was a possible acute central cord contusion and a bruise of the right flank area.
8. On 11 February 1997, plaintiff was admitted to Wake Medical Center for a myelogram and MRI. The cervical myelogram revealed minimal ventral impressions at several levels. The MRI could not be completed because of plaintiffs claustrophobia.
9. On 12 February 1997, nerve conduction studies demonstrated bilateral carpal tunnel syndrome. Dr. Gupton referred plaintiff to Dr. Stephen C. Boone, a neurologist.
10. On 25 February 1997, plaintiff continued to have problems with his right wrist and after his one and only visit to Dr. Boone, Dr. Boone prescribed plaintiff a wrist splint and pain medication.
11. On 17 March 1997, plaintiff presented to the emergency room at Carolina Hospital due to continued hand pain. Dr. Thomas G. Fulghum prescribed a wrist splint for night wear and physical therapy. Plaintiff called Dr. Guptons office and informed him of his trip to the emergency room.
12. Plaintiff began physical therapy and noted to his physical therapist that he was having trouble sleeping and was continuing to have hand pain.
13. On 24 March 1997, plaintiff presented to Dr. Edward Mulcahy, an orthopedist, for a second opinion. Plaintiff reported neck pain and pain radiating into both arms with numbness in the third and fourth fingers on his right hand and occasionally in his left hand. Dr. Mulcahy found a positive Tinel sign bilaterally with the exception of increased parasthesis in the third and fourth fingers of the right hand. Dr. Mulcahy diagnosed plaintiff as suffering from a cervical strain with bilateral radiculopathy related to plaintiffs 31 January 1997 injury by accident. Dr. Mulcahy took plaintiff out of work.
14. Plaintiff continued to have physical therapy during the spring of 1997 and was given some relief from his pain by being placed in traction on his neck. On 17 April 1997, plaintiff had an MRI scan at which revealed minimal covertebral ridges between the C3 and C7 vertebrae.
15. On 23 April 1997 and 29 April 1997, plaintiff again presented to the emergency room at Central Carolina Hospital because of the pain in his hands.
16. On 29 April 1997, plaintiff presented to Dr. Laura Josewicz, a neurologist. Dr. Josewicz noted that plaintiff had weakness in his muscle grip bilaterally and tentatively diagnosed plaintiff with cervical spondylosis.
17. On 29 May 1997, Dr. Josewicz performed nerve conduction studies showing significant prolonged sensory latencies, sensory palmer latencies, absent digital latencies, and reduced sensory nerve action. Dr. Josewicz diagnosed plaintiff with severe bilateral carpal tunnel syndrome.
18. The competent medical evidence in the record establishes that plaintiff has reached the end of his healing period with regards to his neck.
19. Drs. Gupton, Josewicz, Boone, and Mulcahy all agree that plaintiff had contracted carpal tunnel syndrome from a previous occupation. Dr. Gupton opined that plaintiffs fall on 31 January 1997 may have precipitated symptoms of carpal tunnel syndrome. Dr. Josewicz opined that plaintiffs carpal tunnel syndrome was asymptomatic until the trauma he suffered on 31 January 1997.
20. Notwithstanding the fact that Dr. Ciliberto, a neurologist and partner of Dr. Mulcahy, rendered two different opinions regarding the causation of plaintiffs carpal tunnel syndrome, and even though Dr. Boone opined that plaintiffs carpal tunnel syndrome was not caused by his accident at work, Drs. Josewicz and Mulcahy opined that plaintiffs fall at work on 31 January 1997 caused plaintiff to become symptomatic.
21. Drs. Ciliberto and Mulcahy treated plaintiff from May of 1997 through April of 1998 and opined that during this time plaintiffs carpal tunnel syndrome condition failed to improve. Consequently, Drs. Ciliberto and Mulcahy recommended that plaintiff undergo carpal tunnel syndrome release of the medial nerve in his right wrist in order to properly diagnose plaintiffs condition and more importantly to relieve symptoms caused by his injury by accident of 31 January 1997.
22. Since Dr. Boone only examined plaintiff once and because Dr. Ciliberto offered two different opinions regarding the cause of plaintiffs carpal tunnel syndrome, the Full Commission gives greater weight to the testimony of Drs. Mulcahy, Josewicz and Gupton who treated plaintiff over longer periods of time.
23. The competent evidence in the record establishes that as a direct result of plaintiffs injury by accident arising out of and in the course of his employment on 31 January 1997, plaintiff suffered an aggravation, exacerbation or acceleration of his underlying nerve condition, carpal tunnel syndrome.
24. Plaintiff has not reached the end of the healing period for his right hand and right wrist injury.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident to his neck arising out of and in the course of his employment with defendant-employer and as a direct result of a specific traumatic incident of the work assigned on 31 January 1997. N.C. GEN. STAT. 97-2(6).
2. Plaintiff has reached the end of the healing period for his neck injury.
3. As a direct and proximate result of plaintiffs work related injury by accident on 31 January 1997, plaintiff sustained an aggravation, exacerbation and/or acceleration of his pre-existing nerve condition in his arms and hands which resulted in symptoms which have been diagnosed as carpal tunnel syndrome. N.C. GEN. STAT. 97-2(6).
4. Plaintiff has not yet reached the end of the healing period for his right hand and right wrist injury. N.C. GEN. STAT. 97-31.
5. Plaintiff is entitled to have defendants pay for all of his medical treatment, to be incurred for the injury by accident to plaintiffs right hand and wrist, including but not limited to, a carpal tunnel release on his right hand and wrist arising from this injury by accident for so long as such examinations, evaluations and treatments may reasonably be requested to effect a cure, give relief, and will tend to lessen plaintiffs disability from his injury by accident of 31 January 1997. N.C. GEN. STAT. 97-25; 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following
 AWARD
1. Defendants shall pay for all medical expenses incurred or to be incurred by plaintiff related to the injury by accident to plaintiffs right hand and wrist, including but not limited to, a carpal tunnel release on his right hand and wrist arising from this injury by accident for so long as such examinations, evaluations and treatments may reasonably be requested to effect a cure, give relief, and will tend to lessen plaintiffs disability from his injury by accident of 31 January 1997.
2. To the extent that plaintiff suffers a period of total disability following his surgery, defendants shall pay for his period of total disability at a compensation rate of $345.74 per week.
3. As plaintiff has not yet reached the end of the healing period for his right hand and wrist, this Opinion does not address this issue. However, in the event that the parties should be unable to agree on the amount of compensation for permanent partial impairment to plaintiffs right wrist which may be due, either party may request a hearing from the Commission to resolve this issue.
4. A reasonable attorneys fee of 25% of any compensation due plaintiff in the future is approved for plaintiffs counsel and shall be paid by deducting from compensation paid to plaintiff in the future and paid directly to plaintiffs counsel.
5. Defendants shall pay the costs and expert witness fees of $235.00 to Dr. Ciliberto and $235.00 to Dr. Mulcahy.
S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_______________ DIANNE C. SELLERS COMMISSIONER